TOM RILEY LAW FIRM,
P.C., Appellant,

v.

Linda PADZENSKY, Appellee,

and

David R. Kinzenbaw, Defendant.

No. 87–596.

Supreme Court of Iowa.

Oct. 19, 1988.

Peter C. Riley, of the Tom Riley Law Firm, P.C., Cedar Rapids, for appellant.

John H. Ehrhart, Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

In this further review proceeding, the issue we must address is whether a mortgage lien held by the Tom Riley Law Firm, P.C., merged with its title under a later warranty deed to the same property, thereby giving priority to an intervening judgment lien on the property held by Linda Padzensky. The court of appeals, reversing the district court, held that no merger had occurred and that the law firm's interest was therefore superior to Padzensky's. We agree. Accordingly, we affirm the court of appeals decision and reverse the judgment of the district court. The case is remanded for further proceedings not inconsistent with this opinion.

I. In summer 1981 David R. Kinzenbaw retained the Tom Riley Law Firm to defend him in a civil action brought by Linda Padzensky. Later that year, in October, Kinzenbaw also retained the law firm to defend him against a first-degree murder charge.

On October 21 he gave the law firm a mortgage on certain real property. An accompanying agreement provided that the firm was to collect the income or sale proceeds from the property for application toward Kinzenbaw's legal fees in the civil and criminal matters.

In February 1982 Kinzenbaw's civil case ended in a judgment for Padzensky in the amount of $8180 plus interest. The judgment became a lien on the property that was already mortgaged to the law firm.

At this point Kinzenbaw had paid the law firm about $4100 from his bank account, leaving a balance due under an earlier fee agreement of over $95,000. No funds had yet been generated by the mortgaged property.

In April 1982 the law firm was approached by a person interested in buying the mortgaged property. The law firm agreed to indemnify the potential buyer against the Padzensky lien.

Later that month Kinzenbaw executed a special warranty deed to the mortgaged property, naming the law firm as grantee. The deed provided in part:

> By this instrument grantor conveys all of his interest under a contract for the purchase of the above-mentioned property dated May 1, 1981, and filed of record on May 5, 1981, ... in the office of the Linn County Recorder.
>
> This Special Warranty Deed is given in satisfaction of an assignment and conveyance for security purposes [i.e., the mortgage] dated October 21, 1981, and filed for record on October 21, 1981, ... in the office of the Linn County Recorder.

Kinzenbaw testified that he intended the proceeds from the sale of this property to be credited toward his legal fees. The law firm stood to realize about $15,000 from the sale, the amount of Kinzenbaw's equity in the property.

In August 1984 the law firm brought this action to foreclose its mortgage on the property in question. At trial the firm introduced evidence showing that Kinzenbaw still owed the firm nearly $44,000 as of April 1984.

The district court found that the execution of the warranty deed had merged the mortgage interest into the title and had effected a discharge of the prior security interest and a satisfaction of Kinzenbaw's debt to the law firm. The court concluded that Padzensky's lien was superior to the law firm's.

The court of appeals reversed. It reasoned that the mortgagee's intention is controlling in such a situation and that here the law firm did not intend to merge its two interests. On remand the district court was ordered to determine the amount still owed to the law firm and to establish that amount as a first lien on the property.

We then granted Padzensky's application for further review. According to Padzensky, the court of appeals erroneously ignored language in the warranty deed itself that indicates the law firm's intention to merge its interests.

Our scope of review in this equity case is de novo. Iowa R.App.P. 4. While we give weight to the district court's fact findings, we are not bound by them. Iowa R.App.P. 14(f)(7).

II. A merger occurs when one person obtains both a greater and a lesser land interest in the same property without any intermediate interest existing in another person. The lesser interest is extinguished. Merger occurs in the case of a mortgage when the mortgagee's interest and the fee title are owned by the same person. 3 R.R. Powell & P.J. Rohan, *The Law of Real Property* ¶ 459[1], at 37–262 (1987).

When a mortgagor deeds property to a mortgagee, the deed is presumed to be a continuation of the security, and the right of redemption is presumed to continue. *Koch v. Wasson*, 161 N.W.2d 173, 176 (Iowa 1968). The right of redemption is favored by equity. Thus, a transfer by the mortgagor will operate as a bar to this redemption right only when it clearly appears both parties intended an absolute sale. In arriving at this intention the transfer instrument must be read in the light of the surrounding circumstances and the practical construction the parties themselves placed on the instrument. *Id.* at 176–77.

Padzensky argues that the language "in satisfaction of an assignment and conveyance for security purposes" in the special

warranty deed clearly shows that the law firm and Kinzenbaw intended an absolute conveyance in full satisfaction of the previous security interest, rather than a continuation of that interest. Thus, Padzensky argues, the law firm's prior lien merged into the fee, thereby affording Padzensky's judgment lien priority over the recorded special warranty deed. Additionally, Padzensky argues that the traditional reason for resisting merger, protection of the mortgagor, is not present here because Kinzenbaw claims no interest in the property and seeks no redemption rights.

The district court, utilizing similar reasoning, found that as a result of the special warranty deed, Kinzenbaw was relieved from all liability "for the payment of any and all debts" owed to the law firm.

Although this reasoning is persuasive, it ignores the true situation of the parties in this case. The issue is not whether we should resist a merger to protect a complaining mortgagor. The issue is whether we should resist a merger to protect a mortgagee against a junior lien holder who did not rely on the conveyance in question.

> As to the latter issue, a mortgagee may keep his mortgage alive when it is essential to his security against an intervening title. If there was no expression of his intention in relation to the matter at the time he acquired the equity of redemption, it will be presumed, in the absence of circumstances indicating a contrary purpose, that he intended to do that which would prove most advantageous to himself.
>
> It is the intention of the mortgagee that is controlling.

*Overland-Wolf, Inc. v. Koory,* 183 Neb. 611, 614, 162 N.W.2d 889, 890–91 (1968) (citations omitted); *accord Gourley v. Wollam,* 348 So.2d 1218, 1220 (Fla.App.1977); *Stimpson v. Pease,* 53 Iowa 572, 574, 5 N.W. 760, 762 (1880); *Sylvania Sav. Bank Co. v. Turner,* 27 Mich.App. 640, 644–45, 183 N.W.2d 894, 896 (1970); *Bahrs v. Bastian,* 192 Wis. 642, 644, 212 N.W. 292, 293 (1927); 59 C.J.S. *Mortgages* § 441(a), at

681–82 (1949) ("merger has been denied even where the conveyance was admittedly made in satisfaction and cancellation of the indebtedness").

Thus, the mortgagee's intent controls. And this intent is a fact question. *Gourley,* 348 So.2d at 1220. Whether it is in the mortgagee's best interest to preserve the lien usually depends upon whether any debt remains. In these circumstances, merger would be against the mortgagee's best interest.

In *Stimpson v. Pease,* the assignee of a bankrupt conveyed mortgaged property to the mortgagees in satisfaction of the mortgagees' claim. Subsequently, the mortgage was discharged of record. Finding against a judgment lien holder in circumstances very similar to those here, the court said:

> The question most difficult of determination is as to whether the position of the defendants is well taken, that the mortgage claims, having been discharged in respect to the assignee and bankrupt, must be regarded as discharged in respect to subsequent lien holders. [Judgment in this case was entered after the mortgages were executed.] The holders of the mortgage claims not only took the property in full satisfaction, but they entered a discharge of the mortgages upon the record. The fact, however, that they entered such discharge is not, to our mind, a material circumstance.
>
> The mortgagees' claims, as against the assignee and bankrupt, were discharged by the sale and conveyance, and before any entry of discharge was made upon the mortgage record. That a mortgagee may take a conveyance of the mortgaged property from his mortgagor and still enforce the mortgage as against subsequent lien holders, where there is no intention to discharge the mortgage as against them, is well settled.

53 Iowa at 574, 5 N.W. at 762 (citations omitted). The court could see no reason why the mortgagees would discharge the mortgages as against subsequent lien hold-

ers because it would clearly be against their interest to do so. The court refused to indulge in any presumption that the mortgagees intended to do an act that was clearly against their interest. *Id.*, 5 N.W. at 762; *see also In re Marocco*, 46 A.D.2d 572, 574, 364 N.Y.S.2d 45, 47–48 (1975) (even though mortgagee knew of intervening liens when he released mortgagor, no merger occurred, and mortgagee did not lose his priority over junior encumbrances, when, without intention to subordinate his mortgage to unfiled junior tax liens, he accepted conveyance of mortgaged realty in satisfaction of the bond).

A subsequent Iowa case relied on by Padzensky, *Beacham v. Gurney*, 91 Iowa 621, 60 N.W. 187 (1894), seems, at first blush, inconsistent with *Pease*. In *Beacham*, the mortgagee, knowing that subsequent judgment liens existed, took a deed to the mortgaged property under an agreement to discharge and release the mortgage debt. Recognizing the rule that a mortgagee can take a conveyance from a mortgagor and keep the mortgage lien active, the court refused to apply it to the situation where the mortgagee intends to satisfy the debt as to all parties. *Beacham*, 91 Iowa at 625, 60 N.W. at 188. It is not clear from the case whether "all parties" referred only to the parties to the agreement or whether the lien holders were also included. In any event, the key is the intent to satisfy the debt, a matter not considered in *Pease*. In *Pease*, the focus was on discharge of the mortgage, not the debt.

In this case Padzensky's judgment lien came into existence after Kinzenbaw's mortgage. Kinzenbaw's conveyance to the law firm could not in any way prejudice Padzensky's junior lien position. Under these circumstances, Padzensky cannot object to remaining in a junior lien position because she never bargained for the advancement that would come to her by cancellation or satisfaction of the law firm's mortgage interest. *See* G.E. Osborne, *Mortgages* § 275, at 557 (2d ed. 1970).

Moreover, at the time of the conveyance Kinzenbaw was substantially indebted to the law firm. The debt exceeded what the law firm could realize from the sale of the property. Contrary to the district court's findings, we think it is clear from the evidence that neither Kinzenbaw nor the law firm intended the debt to be canceled by the conveyance alone. In these circumstances, we can see no reason why the law firm would discharge its mortgage as against Padzensky's judgment lien. Such action would clearly be against the law firm's interest. Instead of realizing approximately $15,000 from the sale, to be applied against a debt substantially in excess of that amount, the law firm, after payment of Padzensky's lien of $8180, would realize only about $6800.

By the destruction of the law firm's mortgage lien, Padzensky's judgment lien would be elevated to a priority for which she paid nothing. *See id.* Thus following Padzensky's reasoning, this would result in a windfall to her. *See id.* Consequently, we think the equities are clearly with the law firm. *See id.* at 557–58.

We conclude, as the court of appeals did, that no merger occurred. The district court erred in concluding otherwise. Accordingly, we affirm the court of appeals decision and reverse the judgment of the district court. We remand this case for further proceedings not inconsistent with this opinion.

COURT OF APPEALS DECISION AFFIRMED; JUDGMENT OF THE DISTRICT COURT REVERSED; CASE REMANDED.